**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

UNITED STATES OF AMERICA

v.                                                    Case No.  5:21-cr-35-003-TKW

DARRELL MICHAEL BRITT,

     Defendant.

_____/

## ORDER OF DETENTION PENDING TRIAL

On December 14, 2021, this court conducted a detention hearing pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the Pretrial Services report, the evidence presented at the hearing, and the arguments of counsel, this court finds that Defendant should be detained pending trial because there is no condition or combination of conditions that reasonably would assure his appearance at trial and the safety of the community.

### I—Eligibility for Detention

The "Government has a substantial interest in ensuring that persons accused of crimes are available for trials." *Maryland v. King*, 569 U.S. 435, 452-53, 133 S. Ct. 1958, 1972-73 (2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 534, 99 S. Ct. 1861, 1871 (1979)). To safeguard victims, witnesses, and the community, and to ensure

that defendants are present at their trials, defendants "legitimately may be incarcerated by the Government prior to a determination of their guilt or innocence." *Bell*, 441 U.S. at 523, 99 S. Ct. at 1865-66. To detain a defendant prior to trial, however, "the Government must comply with constitutional requirements and any applicable statutory provisions." *Id.* at 534 n.15, 99 S. Ct. at 1871 n.15 (citation omitted).

In this case, this court is required to hold a detention hearing because the government has moved for detention and the grand jury charged Defendant with:

- an offense for which the maximum sentence is life imprisonment; and

- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.

*See* 18 U.S.C. § 3142(f)(1)(B), (C).

## II—Standard

"The Bail Reform Act of 1984 provides a federal court with two choices when dealing with a criminal defendant who has been 'charged with an offense' and is awaiting trial . . . ." *Reno v. Koray*, 515 U.S. 50, 57, 115 S. Ct. 2021, 2025 (1995). A court may either release a defendant on appropriate conditions or detain the defendant. *Id.* at 57, 115 S. Ct. at 2025. In determining whether detention is appropriate, courts must keep in mind that "liberty is the norm, and detention prior

to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 2105 (1987). The policy of the Bail Reform Act of 1984 "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant" and the safety of the community. *United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985) (per curiam).

"A criminal defendant must be released before trial on personal recognizance or upon execution of an unsecured bond, unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others." *Taylor v. Pekerol*, 760 F. App'x 647, 653 (11th Cir. 2019) (citing 18 U.S.C. § 3142(b)). On the other hand, a defendant must be detained pending trial if he presents a serious risk of flight or poses a danger to another person or members of the community. *Salerno*, 481 U.S. at 749, 107 S. Ct. at 2102; *accord United States v. Montalvo-Murillo*, 495 U.S. 711, 717, 110 S. Ct. 2072, 2077 (1990) (noting that the Bail Reform Act "directs a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness or risk of flight"). Before detaining a defendant pending trial, however, the government must establish by a preponderance of the evidence that a defendant poses a serious risk of flight or show by clear and convincing evidence that he is a danger to another person or the community. *See Salerno*, 481 U.S. at 750, 107 S. Ct. at 2103; *United States v.*

*Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 488-89 (11th Cir. 1988); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

It is important to note that the term "danger to the community" was "not meant to refer only to the risk of physical violence." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990). Under section 3142(e), "danger to the community" is not limited to the danger of physical violence, but "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *United States v. Abdullahu*, 488 F. Supp. 2d 433, 438-39 (D.N.J. 2007) (noting that "danger to the community does not only include physical harm or violent behavior"); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) (noting that "violence is not the only danger to the community this court must consider"). For example, "the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'" *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that "drug trafficking is a serious offense that, in itself, poses a danger to the community"); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (stating that the "risk of continued narcotics trafficking on bail constitutes a risk to the community"). The probability that a released defendant

Page 4 of 24

will continue to engage in narcotics trafficking constitutes a risk of danger to the community. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Majors*, 932 F. Supp. 853, 857 n.2 (E.D. Tex. 1996) ("The very nature of drug offenses themselves constitutes a non-physical danger to the community.") (citation omitted).

Clear and convincing evidence of dangerousness exists when the evidence induces "an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 2437-38 (1984) (citation omitted). Accordingly, to show by clear and convincing evidence that a defendant poses a danger to the community, the United States need not prove that there is a 100% chance that a defendant will commit harmful acts. Rather, the concept of danger entails probability of harm and, thus, demonstrating a substantial risk of harm is sufficient. *United States v. Shea*, 749 F. Supp. 1162, 1167 (D. Mass. 1990) ("The term 'danger' invokes a concept of probability (commonly referred to as risk of harm) rather than certainty of harm.").

As noted above, if the government satisfies its burden of demonstrating dangerousness or risk of flight, the Bail Reform Act requires the detention of a defendant. *Montalvo-Murillo*, 495 U.S. at 717, 110 S. Ct. at 2077 ("The Act . . . requires pretrial detention of certain persons charged with federal crimes and directs

a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness or risk of flight."); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996) ("The Bail Reform Act requires that a defendant be detained prior to trial if there is clear and convincing evidence that no conditions placed upon his release would reasonably assure the safety of the community.").

A defendant may be detained based *either* on the risk of nonappearance *or* his dangerousness; the government is not required to establish both. *King*, 849 F.2d at 488-89; *accord Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required."); *United States v. Dillon*, 938 F.2d 1412, 1417 (1st Cir. 1991) ("Because we conclude that detention is required on risk of flight grounds, we need not address the issue whether appellant also presents a danger to the community.").

### III—The Presumption of Risk of Flight and Danger to the Community

"The existence of probable cause to believe that the defendant committed a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required

and the safety of the community." *Hare*, 873 F.2d at 798. In "order to trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment." *King*, 849 F.2d at 487-88; *United States v. Vargas*, 804 F.2d 157, 163 (1st Cir. 1986); *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985). That is, "an indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumptions set forth in § 3142(e)." *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985); *accord Quartermaine*, 913 F.2d at 916 ("A grand jury indictment provides the probable cause required by the statute to trigger the presumption.").

Because a federal grand jury charged Defendant with an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," there is a rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance at trial and the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

In light of the statutory presumption, therefore, Defendant bears the burden of producing evidence to rebut the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam). "Once the presumption arises, the ball is in the defendant's court, and it is incumbent on the defendant to come forward with

some evidence to rebut the presumption." *Cook*, 880 F.2d at 1162 (citation omitted); *accord Quartermaine*, 913 F.2d at 916 ("Once the statutory presumptions are raised, the defendant carries the burden of production to come forward with evidence to rebut the presumptions."). Specifically, Defendant has the burden of producing evidence demonstrating that he is not a risk of flight and he is not a danger to another person or the community. *Quartermaine*, 913 F.2d at 916; *Hurtado*, 779 F.2d at 1479.

"Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355; *Quartermaine*, 913 F.2d at 916; *King*, 849 F.2d at 488. "The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts." *Stone*, 608 F.3d at 945. Rather, this presumption "represents Congressional findings that certain offenders, including narcotics violators, as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Nevertheless, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Stricklin*, 932 F.2d at 1354-55; *Quartermaine*, 913 F.2d at 916 ("The defendant's obligation to come

forward with evidence does not shift to the defendant the government's burden of persuasion."); *King*, 849 F.2d at 488 (noting that the "statutory presumption imposes only the burden of production" on the defendant "and does not shift the burden of persuasion concerning risk of flight and dangerousness").

In determining whether there are conditions of release that reasonably might assure the appearance of a defendant at trial and the safety of the community, courts must consider:

(1) "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance";

(2) "the weight of the evidence against the person";

(3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *Salerno*, 481 U.S. at 742-43, 107 S. Ct. at 2099; *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

### IV—Findings of Fact and Statement of Reasons for Detention

The following factors support the presumption, and this court's finding, that no condition or combination of conditions reasonably would assure Defendant's appearance at trial and the safety of the community:

**A.    NATURE AND CIRCUMSTANCES OF THE OFFENSE CHARGED**

A grand jury has charged Defendant with conspiracy to distribute and to possess with intent to distribute 500 grams or more of methamphetamine and a quantity of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C), and 846.

The distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 668, 109 S. Ct. 1384, 1392 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002, 111 S. Ct. 2680, 2706 (1991) (Kennedy, J., concurring in part). Thus, the substantial risk that Defendant would engage in drug trafficking if released constitutes a substantial danger to the community. *Cook*, 880 F.2d at 1161; *United States v. Strong*, 775 F.2d 504, 506-07 (3d Cir. 1985) (noting that in the Bail Reform Act, Congress equated drug trafficking with danger to the community).

Indeed, a "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 295 n.12, 100 S. Ct. 1133, 1150 n.12 (1980) (Powell, J., dissenting). Therefore, "an indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community." *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995). Furthermore, studies "demonstrate a direct nexus between illegal drugs and crimes of violence." *Harmelin*, 501 U.S. at 1003, 111 S. Ct. at 2706 (Kennedy, J., concurring). Additionally, "serious drug offenders pose unusual risks of flight." *United States v. Matir*, 782 F.2d 1141, 1146 (2d Cir. 1986); *accord King*, 849 F.2d at 488 (noting that "those charged with narcotics offenses often pose an especially high risk of flight").

Defendant's alleged affiliation with a conspiracy also is relevant to an analysis of the risk of danger to the community and Defendant's risk of flight. *United States v. Marino*, 396 F. App'x 728, 730 (2d Cir. 2010). "The conspiracy poses a threat to the public over and above the threat of the commission of the relevant substantive crime—both because the combination in crime makes more likely the commission of other crimes and because it decreases the probability that the individuals involved will depart from their path of criminality." *United States v. Jimenez Recio*, 537 U.S. 270, 275, 123 S. Ct. 819, 822 (2003) (internal quotation marks and brackets omitted).

Page 11 of 24

Furthermore, through concerted activity, narcotics traffickers can act through co-conspirators. *See United States v. Feola*, 420 U.S. 671, 693, 95 S. Ct. 1255, 1268 (1975) (noting the need to protect "society from the dangers of concerted criminal activity"). "A multiplicity of actors united to accomplish the same crime is deemed to present a special set of dangers, either that the criminal end will be achieved, or that the conspiracy will carry over to new crimes, or both." *United States v. Moran*, 984 F.2d 1299, 1302-03 (1st Cir. 1993) (citations omitted); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986) (per curiam) (noting that a criminal "network has the ability to continue to function while one of its members awaits trial"). Conspiracies present the possibility of co-conspirators assisting each other in obstructing justice. Thus, defendants who allegedly are members of a conspiracy pose an increased danger beyond that of individuals merely alleged to be acting independently. *Krulewitch v. United States*, 336 U.S. 440, 448-49, 69 S. Ct. 716, 721 (1949) (Jackson, J., concurring).

Accordingly, the nature and circumstances of the charged offense indicate that no condition or combination of conditions reasonably would assure Defendant's appearance at trial or the safety of the community.

**B.**     **THE WEIGHT OF THE EVIDENCE AGAINST DEFENDANT**

This court also must consider the weight of the evidence against Defendant.

*Dominguez*, 783 F.2d at 706. This evidence includes the following:

- Video surveillance footage which shows Defendant entering the house of an alleged co-conspirator in conjunction with intercepted communications indicating that Defendant was delivering methamphetamine or collecting proceeds of drug transactions.

- Statements from an alleged co-conspirator that for one year, Defendant was supplying the co-conspirator with one or two pounds of methamphetamine weekly.

- Recordings of allegedly inculpatory conversations by Defendant—obtained by a court-ordered interception—in which Defendant allegedly discusses matters relating to the distribution of methamphetamine and the collection of drug proceeds.[1]

- Inculpatory text messages.

- Telephone records showing calls between Defendant and alleged co-conspirators.

---

[1] An agent for the government testified that the government recorded approximately 500 telephone calls involving Defendant and that approximately 300 of those conversations involved discussions of drugs or drug proceeds. Typically, when the government relies on intercepted communications to satisfy its burden under section 3142(g), it introduces into evidence excerpts of these communications. Inexplicably the government did not do so in this case. It would be an abdication of this court's duty simply to rely on the government's assurances that communications it intercepted were inculpatory. Pretrial Services, however, obtained an affidavit from the Bay County Sheriff's Office which included excerpts from the intercepted conversations. The government did not explain why it thought these excerpts were sufficiently important to include in information provided to a Florida court but not to the United States District Court for the Northern District of Florida.

- Evidence that, despite having four motor vehicles registered in his name, Defendant allegedly paid other individuals to use their motor vehicles without disclosing the reason he desired to use their vehicles.

- Evidence that Defendant allegedly distributed a large quantity of methamphetamine, oxycodone, and hydrocodone. *United States v. Achey*, 943 F.3d 909, 917 (11th Cir. 2019).

- Evidence of a continuing relationship or a pattern of drug sales for resale. *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999); *United States v. Moran*, 984 F.2d 1299, 1303 (1st Cir. 1993).

- Evidence that Defendant allegedly "fronted" methamphetamine to a co-conspirator.[2]

The weight of the evidence, therefore, is substantial. Beyond demonstrating his danger to the community, the weight of the evidence also suggests that Defendant poses a risk of flight because a defendant facing considerable evidence of guilt has a greater incentive to flee than a defendant facing a weaker case. *United States v. Sims*, 128 F. App'x 314, 315 (4th Cir. 2005) (holding that detention was appropriate where "the weight of the Government's evidence against" the defendant "is considerable"); *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987)

---

[2] "Fronting" occurs when a distributor of controlled substances provides the drugs to another person on credit and is reimbursed once the other person sells the drugs to others. *United States v. Mesa*, 247 F.3d 1165, 1169 n.4 (11th Cir. 2001). The fronting of drugs is evidence of a drug distribution conspiracy. *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004).

(where "the evidence against defendants is strong, the incentive for relocation is increased").

As in this case, when the evidence is strong and a defendant is facing a lengthy mandatory-minimum term of imprisonment, not to mention a potential sentence of imprisonment for life, the incentive to flee is substantial. *United States v. Samuels*, 436 F. Supp. 2d 280, 286 (D. Mass. 2006) ("A reasonable prospect of conviction coupled with a then certain prospect of serious punishment suggest a strong motive to flee if free to do so."); *United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) (noting that a defendant has incentive to flee commensurate with the strength of the prosecution's case, especially if he is facing a substantial sentence).

## C.   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The history and characteristics of Defendant also suggest that he poses a risk of danger to other persons and the community and a risk of flight.

### 1.   *Prior Felony Conviction*

The Pretrial Services report summarizes Defendant's criminal history. It indicates that in 2016, Defendant was convicted of a felony offense. "It is well-established that felons are more likely to commit violent crimes than are other law-abiding citizens." *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011); *accord*

*United States v. Johnson*, 399 F.3d 1297, 1300 (11th Cir. 2005) (noting that "many felons, in fact, are more likely than nonfelons to commit violent acts using a firearm," but "not all felons are potentially more violent than nonfelons"); *United States v. Jones*, 651 F. Supp. 1309, 1310 (E.D. Mich. 1987) (noting that "it is a matter of common knowledge and overriding public concern that convicted felons are far more likely to commit additional felonies than are the other members of the public"). Furthermore, a defendant "with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use." *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010). This factor, therefore, suggests that Defendant poses an increased risk of harm to other persons and the community.

### 2. *A History of Distributing Controlled Substances*

In addition to the drug-distribution activity alleged in the indictment, Defendant has a history of conduct that is indicative of drug distribution. For example, in July 2020, the Bay County (Florida) Sheriff's Office arrested Defendant and charged him with possession of a controlled substance (crack cocaine) with intent to distribute. Defendant allegedly admitted that he was in possession of the crack cocaine and that he intended to distribute it to his "workers."

Furthermore, in April 2016, the Panama City Police arrested Defendant and charged him with possession with intent to distribute crack cocaine. The police

report notes that the amount of crack cocaine was consistent with an intent to distribute. Similarly, in April 2009, the Bay County Sheriff's Office arrested Defendant for driving with a suspended license. When deputies searched Defendant he was found to be in possession of 26 grams of marijuana, 10 grams of crack cocaine, and $165 in U.S. currency.

Defendant's history of distributing controlled substances, in conjunction with the grand jury's finding of probable cause to believe that Defendant was involved in a conspiracy to distribute a large quantity of methamphetamine, suggests that, if released, Defendant would continue to engage in narcotics distribution and would be unlikely to abide by this court's orders regarding appearance at his trial. *See United States v. Hill*, 97 F. App'x 350, 352 (2d Cir. 2004) (stating that the defendant's criminal activity demonstrated "that he would be unlikely to respect court orders directing his appearance" at trial); *United States v. Millan*, 4 F.3d 1038, 1047-48 (2d Cir. 1993) (holding that the danger the defendant posed to the community because of his persistent criminal activity weighed against pretrial release); *United States v. Moffitt*, 527 F. Supp. 2d 474, 479 n.4 (W.D.N.C. 2006) (holding that detention was warranted where, among other things, the defendant's conduct demonstrated "a willful failure to obey the law").

In addition to being unlawful and detrimental to the safety of society, it is well known that drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *accord United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting that "the illegal drug industry is, to put it mildly, a dangerous, violent business"). There is a serious danger that, if released, Defendant would return to drug trafficking to support himself. It also is worth noting that "when a drug trafficker reoffends, he is most likely to commit another drug trafficking offense." *Ovalles v. United States*, 905 F.3d 1231, 1254 (11th Cir. 2018) (W. Pryor, J., concurring). Undoubtedly "society is endangered when courts release those individuals onto the community whose past conduct indicates that they are likely to possess, control or distribute controlled substances." *United States v. Anderson*, 670 F.2d 328, 330 (D.C. Cir. 1982). Thus, in multiple ways, "drug offenders pose a special risk of flight and dangerousness to society." *Rueben*, 974 F.2d at 586. This further suggests the need to detain Defendant pending trial.

### 3.    *Previous Violations of Terms and Conditions of Probation*

A court also must consider whether a defendant previously violated the terms and conditions of probation, parole, or some other type of court-ordered supervision.

Such conduct is highly relevant to the analysis because, were this court to release Defendant, he would be required to abide by mandatory conditions. A court reasonably can infer that a defendant who previously refused to abide by terms of probation imposed by another court likewise will not abide by similar terms of pretrial release. *United States v. Alderte*, 336 F.R.D. 240, 281 (D.N.M. 2020) (noting the court's skepticism that the defendant—who previously committed parole and probation violations—would abide by the conditions the court would impose if it released the defendant). Such a defendant showed no regard for the orders of another court. There is little reason to think that such a defendant would obey a subsequent court's directives. A defendant who previously violated a condition of probation, therefore, entails a greater risk of violating conditions of pretrial release. Thus, Defendant's three violations of terms and conditions of his probation further indicates that Defendant poses a danger to the community.[3]

### 4.  *History of Abuse of Controlled Substances*

Defendant also has a history of abusing controlled substances. The Pretrial Services report states that Defendant conceded that he regularly abuses marijuana,

---

[3] Defendant argued that alleged probation violations were withdrawn, but that does not mean that Defendant did not violate the terms of his probation. That simply means that the local prosecutor elected not to pursue the alleged violations. This court may consider alleged violations of probation even when a court did not find a defendant guilty of a probation violation.

that he first used marijuana when he was 20 years old, and that a test of his urine likely would have revealed that he had used marijuana. When the Bay County Sheriff's Office arrested Defendant in May 2021, it found Defendant to be in possession of a small quantity of marijuana. Additionally, in May 2018, the Lynn Haven (Florida) Police Department found Defendant to be in possession of 20.5 grams of cocaine and one pill of MDMA (3,4-Methylenedioxymethamphetamine, commonly known as "ecstasy"). This indicates that Defendant is addicted to or has a strong affinity for controlled substances. This also indicates that Defendant needs capital to purchase marijuana or other controlled substances, and one of the easiest ways to earn capital to purchase drugs is by selling drugs.

Defendant's history of abusing marijuana and the fact that he suffers from an addiction to or affinity for controlled substances further suggests that he poses a risk of flight and a danger to others. *See* 18 U.S.C. § 3142(g)(3)(A) (requiring courts to consider a defendant's "history relating to drug or alcohol abuse"); *United States v. Cruickshank*, 150 F. Supp. 2d 1112, 1117 (D. Colo. 2001) (when detaining defendant, noting that he had a history of substance and alcohol abuse). Various courts have held that the use of illegal drugs is an additional factor favoring detention because a drug abuser is both a flight risk as well as a danger to the community. *United States v. Ellison*, 12 F. App'x 25, 26 (2d Cir. 2000) (affirming the district

court's detention order and noting that a drug abuser poses a risk of flight); *United States v. Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999) (noting that a defendant's history of abusing drugs is a factor that weighs against his release).

### 5.    *Likelihood of a Substantial Sentence if Convicted*

If convicted of the charged offenses, Defendant faces a substantial sentence, including a mandatory-minimum term of ten years of imprisonment and a maximum term of imprisonment for life.

"Assessment of the flight risk posed by a defendant often implies a calculation of the relative cost of remaining and submitting to trial or, in the alternative, fleeing the jurisdiction." *United States v. Megahed*, 519 F. Supp. 2d 1236, 1242 (M.D. Fla. 2007). A defendant facing a substantial term of imprisonment has commensurate incentive to flee insofar as the cost of taking his chances at trial is great in comparison to the cost of fleeing. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (noting that "the steeper the sentence, accompanied by a strong case against him, and an extensive prior criminal history increases the probability of risk of flight"). Defendant, therefore, certainly has strong incentive to flee. *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (noting that a "defendant facing a potentially lengthy prison sentence possesses a strong motive to flee"); *United States v. Tomero*, 169 F. App'x 639, 641 (2d Cir. 2006)

(acknowledging that a "defendant's potential for a fifteen-year sentence created a substantial risk of flight"). This factor also indicates that Defendant should be detained pending trial.

### 6.    *Previous Flight from the Police*

Under section 3142(g), a court also should consider whether a defendant previously resisted arrest or fled from the police. A "defendant's history of flight must be given careful consideration in determining whether bail should be granted." *United States v. Shakur*, 817 F.2d 189, 199 (2d Cir. 1987). "The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase." *United States v. Sykes*, 561 U.S. 1, 9, 131 S. Ct. 2267, 2273 (2011).

According to a police report from the Bay County Sheriff's Office, in July 2010, a deputy conducted a traffic stop after a vehicle ran a red traffic light. The vehicle did not immediately stop for the deputy. After the vehicle came to a stop, Defendant and another male emerged and fled from the deputy. The deputy charged Defendant with resisting arrest. This conduct further suggests that Defendant poses a risk of flight and a danger to the community, that he is not amenable to supervision, and that if this court issued a warrant for his arrest, Defendant would flee from any Deputy Marshal who attempted to execute an arrest warrant.

**D.    THE NATURE AND SERIOUSNESS OF THE DANGER POSED BY RELEASE**

As the discussion above indicates, Defendant poses a serious risk of danger to the community, including the risk of his continued drug distribution. *See Hare*, 873 F.2d at 798 (observing that the "risk of continued narcotics trafficking on bail constitutes a risk to the community"); *Leon*, 766 F.2d at 81 ("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'").

Based on this short summary of some of the information elicited at the detention hearing and the Pretrial Services report, having considered the statutory factors and the findings of fact above, and for the reasons articulated on the record, this court finds that Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure his appearance as required, nor the presumption that he poses a danger to the community. [4] Even if he had overcome the presumption that he should be detained, the factors set forth in section 3142(g) weigh heavily in favor of Defendant's detention and indicate that he poses a risk of

---

[4] Because this court is ordering Defendant's detention, its findings and analysis are focused on the factors that warrant detention. Some factors weighed in favor of releasing Defendant—for example, the fact that Defendant has resided in the Northern District of Florida his entire life and the fact that his mother, father, and children also reside in the Northern District of Florida.

flight and a danger to the community. Accordingly, Defendant shall be detained pending trial.

### V—Directions Regarding Detention

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Attorney General shall afford Defendant a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshals Service for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED**, at Pensacola, Florida, this 15th day of December, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**